JEWELL *v.* JEWELL.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.
   Trial court's finding that 44-year-old defendant wife was guilty of extreme cruelty justifying a decree of divorce to 27-year-old husband *held,* warranted under record which supported his claim that she had a bad temper, was unreasonably suspicious and hectoring to the interference with his business and had falsely accused him of having improper associations with other women.

2. SAME—ALIMONY—PROPERTY SETTLEMENT.
   Finding of trial court that plaintiff husband should pay defendant wife the sum of $7,500, for certain money or property loaned or advanced to him by her during brief marriage, repayment to be made at $100 per month is treated as a property settlement, rather than alimony as the trial court's decree had provided.

Appeal from the Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 22, 1957. (Docket No. 94, Calendar No. 47,421.) Decided March 6, 1958.

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur, Divorce and Separation §§ 56, 58, 70.
[2] 17A Am Jur, Divorce and Separation §§ 924, 931.

Bill by Beryl Bruce Jewell against Dorothy Jewell for divorce. Decree for plaintiff. Defendant appeals. Modified and affirmed.

*Linsey, Shivel, Phelps & Vander Wal (Robert B. Linsey* and *Dale M. Strain,* of counsel), for plaintiff.

*Philip L. Hogan,* for defendant.

VOELKER, J. This is an appeal by the defendant wife from a divorce decree granted the plaintiff husband. The parties were married January 28, 1956, when the husband was 27 and the wife 44. There are no children. The union was as tumultuous as it was brief and the parties separated the following September 10th after the final of a series of quarrels. Thereafter the plaintiff husband filed his bill for divorce on the ground of cruelty, alleging in the traditionally extravagant and redundant prose of these documents (which we shall not repeat) that his wife had a bad temper, that she was unreasonably suspicious and hectoring to the interference with his business, and that she falsely accused him of two-timing her with another woman. Defendant's sworn answer (which incidentally she neglected to include in her appendix) categorically denied any cruelty, denied any bad temper or unreasonable suspicions, but admitted she made accusations of extra-marital adventuring, claiming her charges to be true.

A full-dress hearing was had below. Plaintiff, his father, his sister, and a former employee testified on his behalf. Defendant was the lone witness on her own behalf. No useful purpose would be served by recounting all the picturesque and lurid details in this record more than to say that the testimony on several points was conflicting and bitter. Testimony was offered that the defendant frequently phoned the plaintiff when they were parted: at his

business, at his father's home and place of business, at various other car dealers and elsewhere, daily checking on his whereabouts. She claims that these were the normal inquiries of a loving and anxious wife. There was evidence that she had disrupted a family Christmas Eve party at plaintiff's father's home, looking for plaintiff; that she was hot-headed, excessively jealous and suspicious, and that once in a fit of temper she slapped the face of plaintiff's sister. The former employee at plaintiff's used-car lot testified that she phoned him looking for her husband from 3 to 5 times a day, every day, which required him to leave any customers on the front lot and go answer the phone.

On cross-examination below the defendant admitted that she had never seen her husband with another woman; that she had recently consulted a psychiatrist; and finally that she did not want a divorce and would love and cherish her husband even if he stayed out late, went out with other women, or came home drunk and beat her up, or any or all of these things.

When we weigh these admissions of defendant at the hearing against her prior answer in which she admitted on oath her alleged repeated accusations of infidelity and there claimed they were true, plus her total lack of supporting proof at the hearing to sustain these charges, we cannot feel that the chancellor exceeded the scope of his broad discretion in finding her guilty of extreme cruelty. After all, he was there on the main firing line. As we said in *LeBel* v. *LeBel,* 327 Mich 318, at 319, 320:

"The testimony produced by plaintiff concerning false accusations of infidelity, constant and unprovoked nagging, continual ridicule, embarrassment and humiliation, and the disruption by his wife of plaintiff's business, make out a case of extreme cruelty. (Citing cases.)"

Appellant also complains of the financial allowances in the decree. We think that on this record the chancellor likewise did not exceed his discretion in finding that the plaintiff should pay the defendant $7,500 for certain money or property loaned or advanced him by her during the marriage and by the court ordered to be repaid by him at the rate of $100 per month. If the chancellor was warranted in feeling a measure of skepticism in accepting her story on the divorce proper, we do not think he was any the more bound to accept whole her unsupported testimony on these other matters. We rather agree with counsel, however, that it might have been more fortunate to have called this an allowance in the nature of a property settlement rather than alimony. A decree will accordingly enter in this Court affirming the decree of the trial court except in the particular noted herein, and providing that the payment to be made from plaintiff to defendant shall be in the nature of a property settlement rather than alimony. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and EDWARDS, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.